*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1662**

State of Minnesota,
Respondent,

vs.

Jermaine Octavious Stansberry,
Appellant.

**Filed August 4, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-02-070442

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota (for appellant)

        Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We affirm appellant's sentence for his conviction of aiding and abetting first-degree aggravated robbery because the double durational departure is supported by a substantial and compelling reason to depart from the Minnesota Sentencing Guidelines.

**FACTS**

During the September 1, 2002 robbery of D.H. and the shooting of B.H., D.H. was beaten and B.H. was killed. The state charged appellant Jermaine Octavious Stansberry with three criminal counts: (1) second-degree murder, (2) aiding and abetting first-degree aggravated robbery, and (3) prohibited person in possession of a firearm. The jury found Stansberry guilty as charged and the district court imposed a sentence for each conviction; for the aiding and abetting first-degree aggravated robbery conviction, the district court imposed a double durational departure from the presumptive guidelines sentence.[1] The district court based the departure on the number of assailants and the severe nature of the beating.

Following the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), Stansberry challenged his enhanced sentence in a petition for postconviction relief. The district court ordered a *Blakely* trial. After various delays (attributable to Stansberry) and inaction on both sides, Stansberry moved to either

---

[1] Based on Stansberry's criminal-history score, the presumptive guidelines sentence is 58 months' imprisonment; the presumptive sentencing-guidelines range is 54-62 months' imprisonment. Minn. Sent. Guidelines IV (2002). The district court imposed a sentence of 116 months' imprisonment.

reduce his enhanced sentence to the presumptive 58-month sentence or to schedule a *Blakely* trial, as previously ordered. The district court again ordered a *Blakely* trial.

The state sought an upward durational departure based on two aggravating factors: (1) D.H. was treated with particular cruelty, and (2) Stansberry committed the crime as part of a group of three or more persons who all actively participated in the crime. *See* Minn. Sent. Guidelines II.D.2.b.(2), (10) (2002). The *Blakely* jury was given a verdict form with nine factual questions. The jury answered eight of these questions in the affirmative. Specifically, the jury found that Stansberry committed the crime as part of a group of three or more people who all actively participated in the crime; Stansberry or his accomplices punched D.H., knocked D.H. to the ground, and kicked D.H. while D.H. was on the ground; and D.H. lost consciousness, sustained an injury to his lip, sustained an injury to his forehead, and sustained an injury to his arm. The district court concluded that because Stansberry committed the crime as part of a group of three or more active participants, an upward departure was warranted; the district court declined "to decide whether particular cruelty is a separate independent ground[] for departure." After identifying the reason for the departure, the district court considered all of the *Blakely* jury's findings and determined that a double durational departure from the presumptive guidelines sentence is "fair and proper."

## DECISION

Stansberry challenges the sentence for his conviction of aiding and abetting first-degree aggravated robbery, arguing that there are not substantial and compelling reasons to depart from the Minnesota Sentencing Guidelines. *See* Minn. Sent. Guidelines II.D.

3

(2002). When a departure from the presumptive sentencing guidelines range is justified by proper grounds, we review a district court's decision to depart for an abuse of discretion. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn. 2003); *Dillon v. State*, 781 N.W.2d 588, 594-95 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). But "the question of whether the district court's reason for the departure is 'proper' is treated as a legal issue," which we review de novo. *Dillon*, 781 N.W.2d at 595. "The presence of a single aggravating factor is sufficient to uphold an upward departure." *State v. Rushton*, 820 N.W.2d 287, 289 (Minn. App. 2012). However, reversal is warranted when the reasons for the departure are improper or inadequate and the district court's findings do not support the departure on other grounds. *Taylor*, 670 N.W.2d at 588; *Dillon*, 781 N.W.2d at 595.

**A.**

Stansberry argues that because he was charged with *aiding and abetting* first-degree aggravated robbery, "the involvement of other individuals [is] an essential element of the charge" and, therefore, the three-or-more-persons aggravating factor cannot support a departure. *See* Minn. Sent. Guidelines II.D.2.b.(10) (2002). It is true that "the district court may not base an upward departure on facts necessary to prove elements of the offense being sentenced." *State v. Edwards*, 774 N.W.2d 596, 602 (Minn. 2009). But "aiding and abetting is not a separate substantive offense." *State v. Ostrem*, 535 N.W.2d 916, 922 (Minn. 1995). Rather, it is a theory of liability. *See* Minn. Stat. § 609.05 (2002) (liability for crimes of another); *Ostrem*, 535 N.W.2d at 922-23 (concluding that the district court did not abuse its discretion by "submitting the case to

the jury under an aiding and abetting theory even though the complaint" did not cite Minn. Stat. § 609.05). And this theory of liability requires only two participants. Minn. Stat. § 609.05 (providing that "[a] person is criminally liable for a crime committed by *another person* if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures *the other* to commit the crime" (emphasis added)). Addressing the crime of conspiracy, we recently concluded that, because it "requires only two participants and only one active participant . . . an upward departure can be based on the involvement of three or more active conspirators." *State v. Ayala-Leyva*, __ N.W.2d __, __, 2014 WL 2013325, at *10 (Minn. App. May 19, 2014). Similarly, because a conviction under an aiding-and-abetting theory requires only two participants, grounding a departure in the three-or-more-persons aggravating factor is not improper.

Stansberry also contends that the presence of this aggravating factor is not, by itself, sufficient. Rather, he argues, "the context of the events needs to be considered before using this factor to justify an upward departure." But Stansberry cites no authority supporting this assertion. And the comments to the Minnesota Sentencing Guidelines state that the aggravating factors "are intended to describe specific situations involving a small number of cases." Minn. Sent. Guidelines cmt. II.D.201 (2002). The *Blakely* jury found that this case is among the small number of cases that satisfies the three-or-more-persons aggravating factor. Moreover, although Stansberry implies that D.H. may have been the aggressor because he approached Stansberry, the record establishes that D.H. did so to ask Stansberry to stop arguing with a woman; in response, Stansberry and two

5

male companions committed the offense at issue. The district court did not err by basing the upward departure on the three-or-more-persons aggravating factor.

**B.**

Stansberry also argues that the district court erred by basing the upward departure on the particular-cruelty aggravating factor. *See* Minn. Sent. Guidelines II.D.2.b.(2) (2002). But Stansberry misconstrues the record. The district court specifically based the departure on the three-or-more-persons aggravating factor and declined "to decide whether particular cruelty is a separate independent grounds for departure." *After* the district court found a substantial and compelling reason to depart, it considered all of the *Blakely* findings to determine "how long the departure should be." Not only does this comport with the Minnesota Sentencing Guidelines, which state that a departure should take into account "the severity of the offense," Minn. Sent. Guidelines II.D (2002), but we also "generally defer entirely to the district court's judgment on the proper length of departures that result in sentences of up to double the presumptive term," *Dillon*, 781 N.W.2d at 596. The district court did not abuse its discretion by imposing a double durational departure from the presumptive guidelines sentence.[2]

**Affirmed.**

---

[2] We acknowledge that Stansberry also asserts that "[a] likely reason for the double upward departure in what was otherwise a quick fight at bar close is that [B.H.] was shot and killed an hour later." Stansberry cites no evidence in support of this assertion. Because "[a]n assignment of error based on mere assertion and not supported by any argument or authorities" is waived unless prejudicial error is obvious on mere inspection, *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted), and because no error is obvious, Stansberry has waived this argument.